NINA M. RILEY SBN297534
1605 West Olympic Blvd. Suite 1040
Los Angeles, California 90015
(310) 309-7748
NinaRileyLAW@gmail.com
Plaintiff pro se
and
Attorney for Plaintiff pro se

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

NINA RILEY,

              Plaintiff,

     v.

VINCENT McGILL,

ASWAD AYINDE,

DOES (1-10)

              Defendant(s).

No.

Assigned to

Dept.

COMPLAINT FOR :
1. DEFAMATION
2. SLANDER OF CHARACTER
3. LIBEL
4. FALSE LIGHT
5. MALICIOUS PROSECUTION
6. PROVIDING FALSE INFORMATION TO LAW ENFORCEMENT
7. EXTORTION / BLACKMAIL
8. HARRASSMENT

HEARING DATE:

TRIAL DATE:

**JURY TRIAL REQUESTED**

TO THIS HONORABLE COURT, and to all parties and counsel of record; Plaintiff NINA

1

RILEY complains that Defendants VINCENT McGILL and Defendant ASWAD AYINDE committed Defamation, Malicious Prosecution, Extortion/Blackmail and Harassment against Plaintiff. In addition they knowingly filed false police reports and provided false information to peace officers and the California Bar Association knowing it to be false in order to harass and threaten Plaintiffs person and profession.

May it Please the Court;

JURISDICTION

Jurisdiction is proper in this Court under 28 USC 1332 because 1.) The amount in controversy exceeds $75,000 and 2.) the parties have diversity of citizenship

1.  The amount in controversy is $325,000.00 (exclusive of costs and court fees, attorney fees or punitive damages)
2.  Plaintiff is a resident of California. Defendants are residents of New Jersey
    a.  Defendants committed defamatory act(s) against Plaintiff in the states of California and New Jersey.

CAUSES OF ACTION

1. DEFAMATION / SLANDER / LIBEL / FALSE LIGHT

Under 28 US 4101, Defamation requires 1.) A false statement about the plaintiff; 2.) Communication of the statement to a third party; 3.)  Fault of the defendant amounting at least to negligence; and 4.) Damages suffered by the plaintiff. If spoken, it is slander. If written it is libel. If it accuses one of a crime or is injurious one's profession it is defamation per se.

Here, Defendant made false allegations about Plaintiff and communicated the statements to third parties. Defendants made the statements both verbally and in writings. Defendants were negligent and malicious in that they knew the statements to be baseless and false. Plaintiff has suffered professionally, monetarily and emotionally.

The statements were defamatory per se in two forms. Fist, Defendants made an imputation of criminal conduct to the Plaintiff by accusing her of Theft by Deception. Secondly, Defendants made allegations injurious to Plaintiff in her trade, business or profession. Plaintiff is an attorney and the accusations go directly to her reputation and ability to practice her profession.

MALICE

Defendants acted with actual malice when making the defamatory statements. They knew that the statements were false. They acted with willful recklessness in disregarding their falsity. They made the statements to 1.) The California Bar Association and 2.) The Princeton New Jersey Police Department.

When making the statements, they did so with the intention that Plaintiff would be harmed. They intended she be brought up on criminal charges. They intended she be subject to imprisonment in New Jersey. They intended she be investigated by her bar association. They intended her license to practice law be revoked. They intended to ruin her professional reputation. They intended to ensure she would be unable to continue to practice law.

FALSE LIGHT

Defendant's actions and statements also placed Plaintiff in False Light in that the statements were not only false, they were misleading to both the Police and the California Bar Association.

DAMAGES

Plaintiff suffered harm to her reputation as a California attorney. She suffered emotional distress. She suffered false criminal charges and cost of defense. She lost professional income and opportunities. She suffered professional and personal embarrassment. She currently suffers each of these harms and it is likely the harm will continue in the future.

As a result of the statements, Plaintiff was called in front of the California Bar Association; the entity responsible for both her professional reputation and her license to practice law. She has had to endure timely and costly investigation procedures. They intentionally placed her livelihood in jeopardy. They intended to ruin her professional reputation. She has suffered anxiety, embarrassment, fear, and loss of income.

McGill demanded the Princeton Police Department file criminal charges against Plaintiff. She has been accused of Theft by Deception, a crime of moral turpitude. Not only is she at risk of losing her license, she has to face a criminal trial and the accompanying expense of her defense in court.

4

## MAKING FALSE STATEMENTS TO PEACE OFFICERS

Under both California and New Jersey, it is a crime to make false statements to a peace officer. McGill made the statements to New Jersey Police, knowing them to be false. He accused her of a crime he knew she did not commit.

## FILING A FALSE POLICE REPORT

Under both California and New Jersey law, it is also a crime to file a false police report. Defendant filed a false police report with the Princeton Police, knowing that he was lying and providing false and misleading information. He knowingly and intentionally lied to the police when he filed the report falsely accusing her of a crime he knew she did not commit.

## MALICIOUS PROSECUTION

The facts as stated also prove Defendants committed Malicious Prosecution against Plaintiff. Elements of the tort are:

1. The institution or continuation of a civil or criminal legal proceeding against the plaintiff;
2. By, or abetted by, the defendant (the prosecutor or plaintiff in the malicious action);
3. Termination of the prior proceeding in favor of the plaintiff (for instance, the case was dismissed);
4. Absence of probable cause for instituting the prior proceeding;
5. Malice as the primary purpose for the prior action; and
6. Injury or damage to the plaintiff as a result of the prior action.

Defendants initiated criminal proceedings and bar investigation proceedings against Plaintiff. Defendants were abetted by the Princeton Police and the New Jersey Prosecutor's office and the California Bar Association. Plaintiff was required to respond to allegations and an investigation.

The bar investigation was halted after one of the Defendants provided information to the bar investigators. The criminal proceedings are pending. There was no probable cause for the proceeding as it was based on slander and falsity. The proceeding was instituted with malice and ill will as evidenced by the threats made to Plaintiff. Plaintiffs harm is as complained in her damages and in the complaint.

Actual damages for a malicious prosecution claim will hinge on the emotional impact of the act, such as the confusion, bewilderment, and isolation typically experienced by the wrongfully accused. Plaintiff suffers all. Here, the emotional pain is more pronounced as the claim is in response to malicious criminal charges, since Plaintiff is an officer of the court and has been treated as a criminal. In addition, Plaintiff's uncertainty and fear of entering a criminal trial is enough to prove that the malicious act caused severe emotional distress.

Plaintiffs also suffers a damaged reputation, loss of future earning potential, attorney fees, and court fees.

EXTORTION / BLACKMAIL

Penal Code 518 PC is the California statute that defines the crime of extortion (also sometimes referred to as blackmail). A person commits this offense when he or she uses **force or threats** to compel another person to hand over money or property, or to compel a public officer to perform an official act. Extortion is a felony that carries a potential sentence of four years in state prison.

(a) Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right.

6

(b) For purposes of this chapter, "consideration" means anything of value, including sexual conduct as defined in subdivision (b) of Section 311.3, or an image of an intimate body part as defined in subparagraph (C) of paragraph (4) of subdivision (j) of Section 647. (PC 518)

The required elements in an extortion case are:

1.  The defendant **threatened** to do one of the following to the alleged "victim:"

    a.  commit an **unlawful injury or use force** against him/her, a third person, or his/her property,

    b.  **accuse him/her of a crime** or accuse his/her family member of a crime, or

    c.  **expose a "secret"** involving him/her or a family member, or connect them with some kind of crime, disgrace, or scandal,

2.  when making the threat or using force, the defendant intended to force the "victim" into **consenting** to give him/her money or property or to do an official act,

3.  as a result of the threat, the "victim" did **consent** to give the defendant money or property or perform an official act, and the "victim" then **actually gave** the defendant money or property or performed the official act.

Extortion is a specific intent crime. This means the defendant must have a desire to commit the crime, and an intent to achieve a specific result.

Here, Defendants threatened to:

a)  "come after" Plaintiff and "to go to the end of the earth to find [Plaintiff]" and make sure she regrets her decision "for the rest of [her] short life",

b)  accuse Plaintiff of stealing Defendant's money and make a report to the police,

c)  destroy her reputation and profession by making the allegations to the California Bar Association and to the Princeton Police Department

When making the threats, Defendants intended to 1.) force Plaintiff to give them $20,000.00 and 2.) intimidate her into not reporting them to the authorities.

As a result, Plaintiff did provide $20,000.00 (to the New Jersey Prosecutor's Office in trust for Defendant) and also did not follow up on her reporting of the crime to either the prison authorities or to the police.

7

Plaintiff was told to give the money to a man (Mr. Reddish) who represented himself as Defendants "family attorney" and that he had "juice" with the New Jersey Prosecuting attorney's office. That in return for the money, they would tell the prosecutor and the police to dismiss the charges. For evidential proof, Plaintiff provided $20,000.00 directly to the New Jersey Prosecutor's office instead.

HARASSMENT

"Harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

Here, Defendants made credible threats of violence to Plaintiff. They made statements that they would "go to the ends of the earth" to find her, that she would "regret [her] decision for the rest of [her] short life", and that they would accuse her of criminal activity to the police and to the bar association.

Defendant McGill made untoward sexual advances to Plaintiff. He made references to her body and asked her if she "was a bad girl" and inquired into her sexual preferences and activities. He intimated to her that even though he was older than her that he could "keep up with her" if she wanted. He made comments to her that were sexual and offensive. He gave her leering looks, licked his lips and tried to stare into her eyes. He made inquiries into her personal life and asked if she had a boyfriend, or if she liked women instead. The comments were unsolicited and made her feel uncomfortable.

Any reasonable person would be seriously alarmed and annoyed by such sexual comments and the threats made to her life. Here, Plaintiff is a single woman, living alone. Defendant McGill knew of her address. She was in fear for her physical safety.

Defendants' statements and actions to the police and to the bar association were a knowing and willful course of conduct directed at Plaintiff that seriously alarmed, annoyed and harassed Plaintiff. There was no legitimate purpose to their actions. Any reasonable person would suffer substantial emotional distress. Plaintiff did suffer substantial emotional distress.

Any reasonable attorney would be alarmed and annoyed to be falsely accused to her bar association and be in reasonable fear for her professional reputation. Plaintiff was seriously alarmed, annoyed and does suffer substantial emotional distress. She suffers anxiety, sleeplessness, nightmares, headaches and internal bleeding. She has to defend herself in criminal court. She has had to endure investigation by her bar association. She suffers loss of income and costs of bringing and defending suit in courts of law.

## SUMMARY OF FACTS

1.     Plaintiff is a California licensed attorney in good standing. She practices primarily entertainment law.

2.     Plaintiff appeared pro hac vice for a post-conviction matter involving an inmate in the New Jersey State Prison.

3.     Defendant McGILL has a brother in New Jersey State Prison, Defendant AYINDE.

4.     Defendants obtained the information of Plaintiff's from another prisoner in NJSP.

5.     Defendant AYINDE requested to call Plaintiff saying he had ideas he wanted to share for entertainment and entrepreneurial concepts. Plaintiff agreed to take his phone calls.

6.      During the time period of the phone calls, Defendants sent Plaintiff  $20,000.00. The money was sent voluntarily as an "angel investment" to Plaintiff while Plaintiff continued to engage in phone calls with Defendants.

7.      After some months, Defendants ordered Plaintiff to place the money in accounts that would be revealed to her "later". She was instructed to take phone calls from "unknown numbers".

8.      Defendants told Plaintiff they were going to start purchasing cell phones to smuggle them into the prison and sell to other inmates. They wanted Plaintiff to participate and use the $20,000.00 to do so.

9.      In this manner, Defendants tried to use the $20,000.00 to bribe or entrap Plaintiff into being part of their criminal cell phone scheme.

10.     Plaintiff refused. She stopped all communication with both Defendants. She completed her work and left the state of New Jersey.

11.     Defendants threatened Plaintiff's "short life" and screamed threats to her over the phone. They indicated they would "go to the ends of the earth to find her". She still refused to participate. She reported Defendant and her brother to the NJSP authorities.

12.     Defendants then attempted to intimidate Plaintiff through extortion/blackmail. They threatened her life and her profession. They said they would "come after" Plaintiff and "find her". They told her she would "regret her decision for the rest of [her] short life" and that they would "go to the police and to the bar association". They demanded Plaintiff pay them $20,000.00.

13.     Plaintiff still refused. She left New Jersey and stopped any communication with Defendants.

14.     In retaliation, Defendants accused Plaintiff of "Theft by Deception" to the Princeton

Police Department. They defamed Plaintiff's name and reputation by stating they had hired Plaintiff to represent Defendant AYINDE in his criminal matter. They alleged the money was sent as a retainer fee. They brought investigative charges against Plaintiff to the California Bar Association.

15.     Plaintiff now faces criminal charges in New Jersey for Theft by Deception and the Unauthorized Practice of Law.

16.     Defendants made their allegations to the California Bar Association.

17.     Plaintiff was investigated by the bar association.

18.     Defendant McGILL called the bar association and told some version of the truth, as the investigation was subsequently halted.

19.     The bar association requested Plaintiff keep the association informed of the New Jersey situation and that she *self-report the accusations.*

20.     Defendants did not retain or hire Plaintiff to represent AYINDE in any criminal matter. Plaintiff never appeared in any criminal matter on Defendant's behalf, nor did she agree to.

<u>DAMAGES</u>

Plaintiff's request for damages is based on her harm. She has suffered physical and emotional distress in the form of anxiety, headaches, loss of sleep, depression and thoughts of suicide. She has suffered nightmares and internal bleeding related to high levels of stress and anxiety. She has suffered financially. She suffers the costs of bringing this suit and defending herself in an out-of-state court during a pandemic. Her professional reputation has been tarnished in front of the California bar association. She has had to spend hours of her professional work time in responding to investigations from the bar association, and defending her livelihood and

her reputation.

She does therefore request Compensatory, Actual, and Punitive damages as follows:

a)  Lost wages in the amount of $130,000.00 (reasonable attorney's salary for one-year)
b)  $20,000.00 for pain and suffering;
c)  $150,000.00 for harm to reputation;
d)  $25,000.00 for costs of suit;
e)  Punitive treble damages for malicious ill-will of defamation;
f)  Punitive treble damages for malicious prosecution;
g)  Attorney fees and court costs;
h)  Other damages as the court may deem proper.

Respectfully submitted,


*Nina M. Riley*

/s/  Nina M. Riley
*Plaintiff pro se. ,*
*Attorney representing Plaintiff as pro se*
*Ca. SBN297534*

12

DECLARATION OF NINA M. RILEY

I, Nina M. Riley, declare as true and would testify in a court of law to the following:

1.   I am the Plaintiff in this action, and I have personal knowledge of each fact stated in this declaration.

2.   I never agreed to work as Ayinde's attorney. I never agreed to represent him in his criminal matter. To this day, I have no idea what crime he is incarcerated for.

3.   I never sent any retainer agreement to represent Ayinde. I did not agree to represent him in court. I did not attend any court matters.

4.   I never requested money from Defendants.

5.   Both Defendants made sexual and aggressive remarks to me. I did not report them to anyone, as I was afraid.

6.   When I made the first report to the New Jersey State Prison, the investigator asked if I felt I was being "groomed" by the inmate. I answered yes. I do feel that I was being groomed and victimized by Defendants. They were angry when I refused to participate in the cell phone scheme. They engaged in a systematic pattern over a period of months to engage me. I was unaware of it while it was happening. I honestly thought I was trying to make connections in the entertainment world and that Defendant was an inventor. I was shocked and alarmed by their plans.

7.   As an attorney, I hold the law in the highest regard. I sent the money to the prosecutor's office because they are also officers of the court. I refuse to engage in any activities outside of the law and the legal system.

8.   All facts as stated in the complaint are true from my personal knowledge.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: October 20, 2020

/s/ *Nina m. Riley*

Nina M. Riley SBN 297534
Plaintiff *pro se*
*Attorney for Plaintiff*
1605 West Olympic Blvd #1040
Los Angeles, California 90015
NinaRileyLAW@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28